BAUSCHKA *v.* WESTERN COAL & MINING COMPANY.

Opinion delivered June 13, 1910.

1. MASTER AND SERVANT—NOTICE OF CONDITION OF MINE—EVIDENCE.—In order to show that a company employing men to work in an underground mine had notice that the roof of the mine was in an unsafe condition, it was competent to show that certain of the employees had called attention of the company to the unsafe condition of such roof and had asked for props to support it. (Page 478.)

2. SAME—DUTY TO FURNISH SAFE PLACE.—The owner of a mine is bound to exercise ordinary care, even if props have not been demanded, to discover the condition of the roof of the mine and to keep same in reasonably safe condition for its servants to work in. (Page 479.)

3. SAME—NEGLIGENCE OF MASTER—INSTRUCTION.—Where plaintiff was injured by the fall of a rock from the roof of defendant's mine, and the evidence tended to prove that a rock in the roof of such mine was in a dangerous condition, which would justify an inference that defendant was negligent in failing to discover its condition, an instruction that evidence that the rock was loose was "not sufficient to establish such negligence as would authorize plaintiff to recover," was erroneous as invading the jury's province. (Page 480.)

4. SAME—LIABILITY FOR UNSAFE PLACE.—To establish a master's liability for an unsafe working place, it must be shown, not only that there was an unsafe place which caused injury, but also that the master knew or by the experience of ordinary care should have known of such defect. (Page 480.)

5. SAME—ASSUMED RISK—INSTRUCTION.—Where a miner sued for injuries alleged to have been caused by the defendant mining company's failure to prop the roof of the mine, it was error to instruct the jury that the plaintiff assumed the risk of dangers connected with the business, as the servant does not assume the risk of dangers created by negligence of the master unless he is aware of the danger. (Page 481.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon*, Judge; reversed.

*Robt. A. Rowe* and *Rowe & Rowe,* for appellant.

Appellee should have kept timbers at the mine for use as props. Kirby's Dig., § 5352.

*Ira D. Oglesby,* for appellee.

The judges of this court will not explore the record to discover errors of the trial court. 90 Ark. 393; 89 Ark. 43;

83 Ark. 359; 88 Ark. 450; 75 Ark. 571; 87 Ark. 351; 46 Ark. 69; 59 Ark. 257; 75 Ark. 347; 55 Ark. 547.

McCULLOCH, C. J.   Plaintiff, John Bauschka, was employed by the defendant, Western Coal & Mining Company, as a shot firer in its coal mine at Jenny Lind, Sebastian County, Arkansas, and was injured by falling rock while in the discharge of his duties.   He was passing along the entry or air course in the mine, and a large rock fell from the roof and struck him down, severely injuring him.   He sues to recover damages for the injury thus received, alleging that the same was caused by negligence of the company in failing to exercise ordinary care to provide a reasonably safe place for him to work, and also in failing to furnish props with which to make safe the roof of the air course.

Defendant in its answer denied that plaintiff had received his injury on account of its negligence, and pleaded assumption of risk and contributory negligence on the part of plaintiff.

A trial before jury resulted in a verdict in favor of defendant, and the plaintiff appealed.

Plaintiff's duties were to go into the mine at the close of the day, after the miners quit work, and to go from room to room and fire the shots put in by the miners, to break down coal for the next day's work.   He was passing along the air course when the rock fell on him.   It was a large rock, five or six feet long and six feet wide.   He was alone when it fell and weighed him down, but succeeded with great difficulty in getting himself from beneath it.   He states that, while lying beneath the rock, he observed another large rock hanging loose, and that this frightened him into renewed effort and strength to get from under it.   After he had extricated himself and gotten out of further danger, his groans and cries attracted the attention of another shot firer, who carried him out of the mine.

The testimony tends to show that the roof was in a dangerous condition and needed propping, though it is not shown when the rock which fell became loosened or gave evidence of being loose.   The kind of roof is what the miners call a draw-slate roof, or shaly roof, and there was evidence to the effect that such a roof is dangerous unless propped.   One of the workers in the mine testified that, two days before plaintiff's

injury occurred, he saw a small rock fall from this roof about ten feet from the place where the large rock fell which injured plaintiff. It appears that the entries and air courses are mined out by the miners, and that they constitute the working place of the miners so engaged so long as they are engaged in taking out coal, but that thereafter it is the duty of the company as employer to keep the place safe as a common passway for the use of all employees whose duties call them there.

During the course of the examination of one of the witnesses, the plaintiff offered to prove that one of the miners, while working in the air course, called for timbers with which to prop the roof, and that the same were not furnished. After the question was propounded and ruled out by the court, plaintiff's counsel made the offer in the following language: "We also offer to show that there was no timber there to prop it." The court then made the following ruling thereon: "You may show the condition of the mine, but the company is not bound by any demands this man made, unless you connect it with the plaintiff." Plaintiff saved exceptions to the ruling. He again offered to prove by another witness that the latter "was on a committee of the local union, and called on the company for props and notified the company that there were no props there to prop that roof." The court refused to allow it, and exceptions were saved.

The language in which the ruling of the court is couched indicates that it was necessary, in order to make the testimony competent, to connect plaintiff with the demand for props by showing that he caused the demand to be made, or was relying on the company to furnish the props. This is not correct. It was competent to show that timbers were demanded by any one for use in propping this particular portion of the roof. This for the purpose of showing notice to the company of the dangerous condition of the roof. It was the duty of the company, even if props had not been demanded, to exercise ordinary care to discover the condition of the roof of the air course, and to keep same in a reasonably safe condition, for the air course was the working place of all the employees who used it, in the sense that it was the duty of the employer to exercise ordinary care to make it reasonably safe. It is questionable, however, whether the plaintiff's offer was sufficiently

specific to show that it related to the particular part of the roof where plaintiff was injured, as the air course was more than one thousand feet long at that time. Notice of the necessity of props at another place in the air course would not necessarily constitute notice that the roof was in a dangerous condition at the place where plaintiff was injured. The judgment is to be reversed on other grounds, and, as the testimony may be different on the next trial, we need not decide whether, the offer was sufficiently specific to constitute prejudice in the ruling of the court in refusing to allow the offered testimony.

The court gave the following instruction at defendant's request, over plaintiff's objection: "9. If it is shown by the evidence that prior to the accident the rock which fell was loose and needed propping, that of itself is not sufficient to establish such negligence as would authorize plaintiff to recover."

This instruction was clearly on the weight of the evidence, and invaded the province of the jury. It was prejudicial, and calls for a reversal of the judgment. Plaintiff proved that the large rock was loose and fell, and that another large rock was hanging loose; also, that the roof was in a dangerous condition by reason of being shaly and composed of draw-slate. The jury had the right to infer from these facts that the dangerous condition of the roof could have been discovered by the company in the exercise of ordinary care, and that it was guilty of culpable negligence in failing to discover it. Yet this instruction in effect told the jury that the mere fact that the rock which fell was loose and needed propping for any length of time prior to the time of plaintiff's injury was not sufficient to warrant a finding of negligence on the part of defendant in failing to discover a defect in the roof; and it thus cut off the inference which could have legitimately been drawn that the defect was one which could have been discovered by the exercise of ordinary care. The jury must have understood it to mean that, regardless of the time before the accident the dangerous condition of the roof existed by reason of the loose rock which needed propping, defendant was not responsible unless it had notice of the condition. It is true, we have held that, in order to make the master responsible for an unsafe condition of the working place of a servant, it must be shown,

not only that there was a defect which caused injury, but also that the defect was one that the master had discovered or could have discovered by the exercise of ordinary care. *St. Louis, I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437; *St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372.

But in the present case the defect recited in the instruction was one which was discoverable if it existed any length of time, or at least such an inference might reasonably have been drawn by the jury; and to deny to the jury the right to draw such an inference amounted to an instruction on the weight of the evidence. Other instructions properly submitted the question whether or not defendant exercised ordinary care to discover and repair the defect; but they did not cure the vice of this instruction, which was inherently incorrect and prejudicial.

Another instruction, given at the instance of defendant, was erroneous. It reads as follows: "3. The defendant is not the insurer of the safety of the plaintiff while at work in its coal mine. If there are dangers connected with the business in which plaintiff was injured, he assumes the risk by the wages paid him." It is too broad, for plaintiff by his contract of employment did not assume the risk of dangers created by the negligence of the plaintiff unless he was aware of the defect and appreciated the danger. A servant only assumes the risk of dangers which are incident to the work in which he is engaged, or dangers from defects caused or permitted by the master of which he is aware.

Inasmuch as the question of assumed risk was correctly submitted in other instructions, we need not decide whether or not the fault of this instruction should have been called to the attention of the court by a specific objection. We mention it now so that it may be corrected on the next trial.

Counsel for defendant insist that the abstract furnished by plaintiff is insufficient, and ask for an affirmance on that ground. We are of the opinion that the abstract, though not perfect, is sufficient to comply with the rules of the court. There is enough to show that instruction number 9 was erroneous and prejudicial.

For the error indicated, the judgment is reversed and the cause remanded for new trial.