ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* SCHULTZ.

Opinion delivered November 23, 1914.

1.  MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK.—A master owes his servant a duty to exercise ordinary care to furnish him a safe place in which to work, but this duty extends to such parts of the premises only as the master has designated and prepared for the occupancy of the servant while performing his work according to the methods prescribed by the master for doing the same, and to such other parts of the premises as the master knows, or by the exercise of ordinary care should know, that the servant is accustomed to use while performing his duties.

2.  MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK.—When a servant in the performance of his duties, for his own convenience adopts a method contrary to the methods expressly prescribed by the master, and when the servant occupies places about the premises in the performance of his duties, which the master could not reasonably anticipate that he would occupy, then the master owes the servant no duty to make those places or methods safe, and his failure to do so is not actionable negligence.

3.  MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—LIABILITY.—
    A railroad company will not be liable for an injury to an employee
    whose duty it was to attend to and clean certain lamps by letting
    the same down on pulleys to the ground, when the employee
    instead undertook to clean the lamps from an elevated platform
    or running board, and was injured by falling from the ladder
    leading to the same, there being no evidence that the railway
    officials had knowledge that the employee was disobeying rules,
    and the evidence being insufficient to establish a custom of cleaning
    the lamps other than in the way that the employee had been in-
    structed.

Appeal from Lonoke Circuit Court; *Engene Lank-
ford,* Judge; reversed.

STATEMENT BY THE COURT.

Luther Schultz was in the employ of the appellant
as an apprenticed electrician. He was fatally injured
while engaged in cleaning globes of arc lights attached
to the east and west sides of a coal chute in the shop
yards of appellant in the city of Argenta.

About forty feet from the ground on the east and
west sides of the chute there was a running board or plat-
form forty-six inches wide, which sloped slightly to turn
water. At the south end of the chute there were four
flights of stairs leading up into the chute. At the top of
the third flight of stairs there was a small ladder running
up to the running board on the west side of the chute at
the south end. From the top of the running board at
the south end on the west side there was a ladder with
seventeen rungs, leading up to the main roof of the coal
chute. On the north end of the running board on the
east side was a ladder like the one on the south end on
the west side, running from the roof down to the top
of the running board. To light the building there were
four large arc lights, two on the west side and two on
the east side; there was a light hanging from each end
of the running boards. There were a number of small
incandescent lights in the chute, running along over-
head.

The appellee, as the administrator of the estate of
Luther Schultz, brought this suit to recover damages

for the injury and death of his intestate. He alleged, among other things, that his intestate, while in the performance of his duty, "climbed up the ladder on the west side of said coal chute, for the purpose of getting to the arc lights on the opposite side, and when he reached the rung of the ladder next to the top of said ladder, said rung broke, and he fell, and in falling he caught with his hand the next or third rung from the top, which rung also broke, and on account of said rungs breaking, he was hurled to the ground a distance of about sixty-five feet, receiving fatal injuries;" that these injuries were caused through the negligence of appellant in permitting the rungs of the ladder to become rotten, so that they were not sufficiently strong to hold the weight of a person who used the ladder; that his intestate did not know and could not have known of this rotten condition of the ladder; that there were no written or printed notices that the ladder was in an unsafe condition that no one warned him not to use the ladder.

He alleged that because of the negligence of the appellant in the particulars mentioned, Luther Schultz fell and was injured in such way that he died in about two hours thereafter, having endured excruciating pain and mental anguish.

Appellee prayed for damages in the sum of $15,000 for the benefit of the estate, and for the benefit of E. E. Schultz, as the father and next of kin, in the sum of $25,000.

Appellant answered, denying the allegations of negligence, and alleged that appellee's intestate was killed by reason of his own negligence "in going upon the ladder and the roof of the coal chute where he had no business, no duty to perform and no right to be."

After the testimony was adduced the appellant asked the court to instruct the jury to return a verdict in its favor, which instruction the court refused, and to which appellant duly excepted, and made the refusal of the court to give this instruction one of the grounds of its

motion for a new trial. Appellant also alleged as one of its grounds for a new trial that the verdict was contrary to the evidence.

In addition to the facts already stated, showing how the coal chute was constructed, etc., other facts will be stated in the opinion.

From a judgment in favor of appellee in the sum of $5,000, this appeal has been duly prosecuted.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford,* for appellant.

There is no liability established. The testimony shows that the deceased was an electrician apprentice who had been instructed in the proper method of cleaning the lamps, viz.; by letting them down, and that there was no occasion for deceased to go up on the ledge or roof for that purpose. It is also shown that the ladder complained of was put there for the use of the carpenters in inspecting and repairing the roof. Under the testimony, if there was any difficulty about letting any lamp down, deceased was under instructions to report it to his foreman. If deceased went into this dangerous situation merely for his own convenience and accommodation, or for his own amusement, appellant is not liable. 166 S. W. 958; 93 Ark. 397. There was no reason for the master, after having instructed deceased in the proper method of cleaning the lamps, to anticipate that he would go up on the roof to discharge his duties. Danger of falling from the roof was not "within the obvious scope of his employment." 59 Ark. 98; 3 Labatt, Master and Servant, § 1048 and note 1, and § 1045; 1 White, Pers. Inj., § 358; 4 Labatt, Master and Servant, § 1558b, and note 8; 12 L. R. A. (N. S.) 861, and note. Where a master has provided a safe place in which to work, and he, on his own volition, undertakes to do the work in some other place which involves a risk of injury, he assumes the risk; and if he is injured as a result, the master is not liable. 111 Ill. App. 654; 187 Mass. 1; 85 Minn. 318; 99 N. Y. Supp. 404.

*Hoeppner & Young* and *W. H. Pemberton,* for appellee.

The undisputed testimony shows that in order to clean the lamps on the ground, it was necessary to lower them just alongside of the tracks where engines were constantly coaling, making it extremely dangerous because of their nearness, and the likelihood of coal falling on one trying to clean the lamps, to do the work while engines were being coaled. There is testimony showing that the easiest, simplest, safest and quickest way to clean the lamps was the method adopted by the deceased.

Under the evidence of this case, it was the duty of appellant to have anticipated that deceased would use the ladders in the performance of his work since it is the case of *Railway* v. *Yates,* 165 S. W. (Ark.) 282, is shown that this was the safest and best way. We think conclusive and controlling in this case. See also 103 Ark. 627.

Wood, J., (after stating the facts). The only grounds of negligence alleged in the complaint are that appellant failed to keep the ladder from which Schultz fell in a safe condition, and failed to warn him of such unsafe condition.

The uncontradicted testimony shows that the rungs of the ladder were rotten, and in an unsafe condition, and there was testimony tending to show that no warning was given to Schultz of the unsafe condition of the ladder. So, if appellant owed any duty to Schultz to keep the ladder in a safe condition or to warn him of such condition, then the allegations of negligence have been fully sustained. But, as we view the uncontradicted evidence, no negligence could be predicated upon the failure of appellant to keep the ladder from which Schultz fell in a safe condition, nor upon its failure to warn him of the danger of using the same; for the undisputed evidence shows that appellant owed no duty to Schultz either to keep the ladder in a safe condition or to warn him that the ladder was unsafe.

The duties of Schultz at the coal chute were to trim the lamps and clean the globes. The lamps were hung on brackets. The brackets were about eighteen inches below the running board or ledge and it was about twelve inches from the top of the bracket down to the lamp. It was about two feet from the building out to the lamp. A pulley was attached to the bracket. The lamp was hooked on the pulley with a chain. The chain ran through the pulley and was fastened to the lamp by a hook. The chain came down and was hooked to one of the posts, about four or five feet above the ground. One in cleaning the lamps would use a rope, attaching it to the chain that extended from the lamp down near the ground. The weight of the lamp would cause it to come to the ground to be cleaned.

The electrician under whom Schultz worked, testified that he instructed him about the lights on the coal chute. He told him that it was his duty to trim the lights and wash the globes, and showed him how to do it, according to the method above stated. He told Schultz that "if there was anything wrong at those junction boxes to let witness or the other electrician know. He showed Schultz how to do his work."

Another witness, who had charge of the electric equipment and of the lights at the coal chute, testified that if the electric wiring was out of fix and anything had to be done to the lights except to clean them that the electrician would look after that. Schultz was not expected to look after the repairs. All he had to do was to clean the globes and look after the lights around the coal chute. He was to clean the lamps, clean the globes and repair the extension lights that were about the power house. The testimony does not show that it was the duty of Schultz to fix or clean the incandescent lights, or that the incandescent lamps were out of repair.

There was testimony on behalf of the appellee tending to show that the lamp at the southwest corner would not let down because the pulley was gone and there was

nothing but the bolt left for the chain to run on and the chain would not run on it.

The evidence was sufficient to warrant a finding that the chain which was used for the purpose of lowering the lamp at the southwest corner on the day that Schultz received his injury would not work because of the fact that the pulley was gone, and on that account the lamp could not be raised or let down.

There was also testimony on behalf of the appellee tending to show that the hangings of the lamps that were of metal, were badly bent; that they had been repaired a number of times, and that they were in a very insecure condition, but there was no testimony on his behalf to the effect that the lamps on the east side were in such condition that they could not be let down to the ground.

There was testimony by witnesses on behalf of the appellee tending to show that at times they saw Schultz on the running board or roof of the coal chute, engaged in trimming and cleaning the lamps. One witness testified that he saw him on the running board three or four different times, working on those lights, cleaning the globes and putting in carbons. Another witness testified that on the morning of the day that Schultz was injured the witness saw Schultz on the lower running board on the west side of the coal chute fixing lights. He was cleaning a globe. Still another testified that he saw Schultz "lots of times working on both sides of the chute. He would work the lights on one side and go up the side and work the other side on that platform. He would go up the ladder and come to this end and down that ladder and work that way. All I ever saw him do would be to go from one light to the other and fix his light."

Another witness testified that he had seen the lights cleaned from the running board, and that was the only place he had seen them cleaned. He was asked how many times he had seen them cleaned from the runnig board and stated that he "made no memorandum of that." He saw Schultz cleaning them from the running board but one time.

It thus appears from the undisputed evidence that the method adopted by the appellant for cleaning the lamps was by letting the same down to the ground by a chain, in the manner above described, and that when, for any reason the lamps could not be let down for cleaning by this method because of any defect, it was the duty of Schultz to notify one of the electricians in charge, so that such defect could be repaired; that it was not the duty of Schultz himself to make these repairs. Schultz was only an apprentice.

While the evidence shows that Schultz went upon the running board three or four times for the purpose of cleaning the lamps, and that Schultz and others were seen "lots of times" cleaning and working about the lamps from the top of the running board, there is no evidence whatever tending to show that this method of cleaning the lamps, adopted by the employees themselves, was brought to the knowledge of any division electrician, the electric engineer or electricians who had the work in charge and whose duty it would be to see that the methods adopted by the appellant for doing the work were followed by its employees, or, if not followed, to report the matter to their superiors charged with the duty of enforcing the methods adopted for the safety of the employees whose duty it was to trim the lamps, clean the globes, etc.

There is no testimony, in the first place, sufficient to warrant a finding that the employees had established a custom for cleaning the lamps, globes, etc., contrary to the method that had been prescribed by the appellant for doing that work; and, in the second place, there was no evidence whatever to show that the method adopted by Luther Schultz was brought to the knowledge of the superior officers of the appellant over Schultz so as to make appellant liable for a failure to provide a safe place for doing the work in the manner that he was performing the same at the time of his injury. The method adopted by Schultz is not shown to have been so general and continuous as to warrant a presumption of fact that the agents of appellant charged with the duty of directing

Schultz knew of the method he had adopted for cleaning the globes, and that they had acquiesced therein. On the contrary, the testimony of the agents and servants of appellant was to the effect that the only method for the cleaning of these globes and repairing the lights known to them was that of letting the same down to the ground in the manner described; that the ledge or running board was not built for the purpose of having them cleaned or repaired thereon; that it was dangerous to clean them in that way and that it could not be done. Some of them stated that one could not stand on the ledge or running board and repair any of the lights or wires; that they could only be cleaned and repaired by letting them down.

There was testimony to the effect that the ladder from which Schultz fell was put there for the use of the carpenters, and that it was not intended to be used by any one else.

(1-2) The master owes to the servant the duty of exercising ordinary care to make safe the place designated for the servant to do his work, but this duty extends to such parts of the premises only as the master has designated and prepared for the occupancy of the servant while performing his work according to the methods prescribed for doing the same, and to such other parts of the premises as the master knows, or by the exercise of ordinary care should know, that the servant is accustomed to use while performing his duties. But where the servant adopts methods for his own convenience, contrary to the methods expressly prescribed by his employer, and where the servant occupies places about the premises in the performance of his duties that the master could not reasonably anticipate that the servant would occupy, then the master owes the servant no duty to make those places or methods safe, and his failure to do so is not actionable negligence. See *Pioneer Mining & Mfg. Co.* v. *Talley,* 12 L. R. A. (N. S.) 861, and note; *Triangle Lumber Co.* v. *Acree,* 112 Ark. 534, 166

S. W. 958; 4 Labatt, Master and Servant, § 1558b, note 8; *Gillette* v. *General Electric Co.*, 187 Mass. 1.

(3) The burden was on the appellee to prove that appellant was negligent as alleged in his complaint. This he has failed to do. The judgment must, therefore, be reversed, and, as the case seems to have been fully developed, the cause will be dismissed.