CENTRAL COAL & COKE COMPANY v. CHARLES.

Opinion delivered February 14, 1916.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—INGRESS AND EGRESS TO AND FROM A MINE.—A mine owner owes to its employees in the mine, the duty to furnish a safe place to work, to keep the place in a safe condition, and to furnish a safe mode of ingress and egress, to the servant while on the premises of the master.

2. MASTER AND SERVANT—INJURY TO SERVANT—MINE—CONTRIBUTORY NEGLIGENCE.—Plaintiff, an employee in defendant's mine, was injured while entering the mine; held, under the evidence that defendant's

other servants knew of his whereabouts, and that as plaintiff was walking on the customary and only place where he could walk, that he was not guilty of contributory negligence.

3. NEGLIGENCE—PERSONAL INJURY ACTION—SPECIFIC ACTS OF NEGLIGENCE.—In an action for damages for personal injuries by a servant against his employer, it is reversible error for the court to give instructions as to the defendant's negligence in general, when the evidence shows only the particular act of negligence which resulted in the injury complained of.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellee sued appellant to recover damages for personal injuries alleged to have been sustained while employed in appellant's coal mine.

Appellee testified as follows: I have been working in coal mines since 1887, and have been working in appellant's mine for seven or eight years before I was injured. On the morning of the accident, my room was full of coal, and I did not go to work as usual. I met the pit boss, he told me that I had better work in the entry until they got a couple of cars of coal loaded out of my room. I went home, got breakfast and came back to the mine between 8 and 9 o'clock. I saw Fred Woodson, rope rider at the mouth of the slope, and asked him which way that trip was going. Woodson replied that he did not know. I asked him how long the trip was going to stand there. Woodson answered he did not know, maybe a half-hour, or maybe longer. I then told him if it was going to stop there that long, I was going down the slope. I went down the slope about 700 yards, going past the engine which pulled the cars up the slope. I was going down the main track, and saw a rope rider on the front end of the car with his lamp on his head. I turned off on an empty track and had taken five steps when the empty trip cars struck me in the back. When I fell I struck a big piece of timber, about thirty inches thick, near the track. The timber was so close to the rail, the car, in dragging me along, pinioned my leg between the cars and the timber. My leg was broken. At the place where I was walking when hit, there

was thirty inches between the track and rib or walls of the passage. This big piece of timber was between the track and the rib. There were dog or refuge holes along the side of the wall there thirty or forty feet apart. It is customary for the workmen to go backward and forward in the mine all during the day. Sometimes they ride trip cars, and sometimes they walk. There is no other place to walk except down the track. There was not sufficient room for a man to walk between the tracks and the walls of the passage. The dog holes are placed in the side of the wall for the men to go in while the trip cars pass on the track. There were two dog holes near the place where I was injured, and they were both filled up with timber and debris. Another workman was in another refuge hole near by. I did not hear the trip cars coming because the engine was making so much fuss. The trip cars hit me just about the time I saw them.

It was shown by other witnesses that it was about 2,000 feet from the mouth of the slope from where the accident happened, and that it was the custom of the miners to walk in the center of the track down the slope in going to and from their work; that the rope riders have a light on their caps and generally sit on their cars; that it is a dangerous place at the switch near where appellee was injured, because the empty cars and loaded cars pass each other.

One of the witnesses for the defendant testified that there was sufficient space between the track and the ribs for a person to step out of the way of passing cars. Another one said, that he usually asked the engineer where the trip was, and waited until it got by if it was not all right.

The engineer, himself, testified, that he gave signals for moving the cars, but does not remember on that particular day to have signaled this trip; that he saw some one pass along just before the accident, but did not know who it was; that the engine makes considerable noise; that sometimes you can hear a trip coming, and sometimes you can not hear it; that it is wider from track to

wall in some places than others; that it averaged about two and one-half feet.

A rope rider testified that he remembered appellee going along on the morning of the accident, and asking him if he was going down in the mine right then. He stated that he told him that he could not tell, but would not go until he got a signal to do so; that the engineer has charge of handling the cars; that the loaded cars are brought up the slope to the tipple, and after being unloaded, are kept there generally from a few minutes to a half-hour before they are returned.

Other evidence was adduced by appellant which tended to show that appellee was guilty of negligence at the time he received his injuries. The jury returned a verdict for appellee in the sum of $990, and the case is here on appeal.

*Ira D. Oglesby,* for appellant.

1. There was no testimony that defendant failed to furnish competent and careful servants to handle its machinery, or failed to provide a system of signals to warrant safety to those who must travel on its gangways or slopes, or that it negligently permitted said gangway or slope to become filled with coal, or debris, or permitted its cars to run at excessive speed, etc. In fact, no negligence whatever is shown, and defendant's instructions 3, 4, 6 and 7 should have been given. 74 Ark. 19; 78 *Id.* 553; 88 *Id.* 26; 77 *Id.* 448; 70 *Id.* 441.

2. There was no negligence on the part of the company, and plaintiff assumed the risk by the grossest contributory negligence. 106 Ark. 206; 226 Fed. 495.

3. The instructions for plaintiff are erroneous. Cases *supra.*

Appellee *pro se.*

The court properly refused the requests for instructions 3, 4, 6 and 7, by defendant. The questions of proximate cause and assumed risk are for the jury. This case falls squarely within the rule of 77 Ark. 557. Here the danger was not of the kind ordinarily incident to the

work, but the conditions of the service were altered, and the servant suddenly brought face to face with danger arising from the master's own negligence. One can not assume a risk he does not know of, or one made by, a servant as in this case. 118 Ark. 128. A servant has a right to rely upon the master's judgment; that he will not negligently or carelessly run over him. This case is fully covered by the court's charge. Kirby's Digest, § § 5343-4; 120 Ark. 394; 89 Ark. 522.

HART, J., (after stating the facts). It is earnestly insisted by counsel for appellant that there is not sufficient evidence to support the verdict and this we regard as a very close question. Appellee was a coal miner and was going to his place of work at the time he was injured. It was the custom of all the servants to walk down the track as they went to and from their work. There was a passage down into the mine which contained two tracks, one for the loaded cars to be hauled up, and the other for the empty cars to pass down.

(1) It is the general rule that it is the master's duty to use ordinary care to furnish his servant a safe place to work and to exercise the same degree of care to keep his working place in safe condition. Under the circumstances in this case this duty carried with it the further duty to furnish the servant a safe mode of ingress and egress while on the premises of the master. *St. Louis, I. M. & S. Ry. Co. v. Duckworth,* 119 Ark. 246, 177 S. W. 1148.

(2) This seems to be conceded by counsel for appellant but he contends that under the facts in this case appellee was guilty of contributory negligence and bases that contention on the following facts: that appellee was an experienced miner and had worked for appellant seven or eight years; that he was familiar with the methods of work and knew that when the mine was being worked cars were likely to be on the loaded track and empty track; that the empty trip would move whenever the engineer gave the signal; and that loaded and empty cars passed

at the "parting," a place on the track near where appellee was injured.

On the part of appellee, however, it was shown that he had told the rope-rider that he was going down the track and the rope-rider saw him do so; that he was at a place where he had a right to be; that no other way was provided by appellant for its servants to go to and from their work rooms; that there was not sufficient room between the track and the walls for a person to walk; that the servants were accustomed to walk along the middle of the track and, indeed, that it was the only place for them to walk.

As we have already seen appellee notified the rope rider on the empty trip cars that he was going down the slope to his working place; the engineer also saw some one pass just before he gave the signal for the cars to move.

Appellee was in full possession of his senses and from his testimony and the attendant circumstances, the jury might have found that he was keeping a sharp lookout for the cars and that he did not hear any signal given for them to move.

Under this state of facts we think the negligence of appellant and the contributory negligence of appellee were properly questions for the jury.

(3) Counsel for appellant also contends that the court erred in refusing to give certain instructions to the jury and in this contention we think counsel is correct. Appellee in his complaint alleged that the defendant failed to furnish competent and careful servants to handle its machinery and perform the duties required of them in operating the mine, and that appellant failed to establish a system of signals in operating the mine as required by statute. There was no testimony whatever tending to support these charges of negligence. The only contention made by appellee at the trial was that the particular servants engaged in the work at the time he received his injury were negligent. There was not a particle of testimony to show that they were incompetent or careless servants in

general. The testimony only went to show a particular act of negligence at the time appellee was injured. So, in regard to the allegation of negligence of appellant in failing to provide a system of signals to warn those who were traveling its slopes; there was no testimony to establish this allegation of negligence. The testimony only went to the extent of showing negligence on the part of the engineer in failing to give signal or warning at the time appellee was injured.

Counsel for appellant by a specific instruction asked the court to state to the jury that there was no evidence to establish the particular allegations of negligence just referred to and the court committed prejudicial error in not giving the instruction. *Harris Lumber Co.* v. *Morris,* 80 Ark. 260; *Arkansas Central Rd. Co.* v. *Workman,* 87 Ark. 471; *Huddleston* v. *St. Louis, I. M. & S. Ry. Co.,* 88 Ark. 454.

We would not reverse the case for the refusal of the court to give these particular instructions, if in the instructions given, it had limited the right of appellee to recover to the specific acts of negligence proved at the trial; but the court did not so limit appellee's right to recover but, on the other hand, gave general instructions on the question of appellant's negligence.

For the error in refusing these instructions as indicated in the opinion, the judgment must be reversed, and the cause will be remanded for a new trial.