## St. Louis, Iron Mountain & Southern Railway Company *v.* Howard.

### Opinion delivered June 26, 1916.

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—Such dangers as are normally and necessarily incident to the employment are assumed by the employee, but such risks as arise out of the failure of the employer to exercise due care to provide a safe place of work and safe appliances for employees, are not assumed by an employee, unless he is aware of the defect and risk, or unless such defect and danger was plainly observable.

2. MASTER AND SERVANT—INJURY TO SERVANT—USE OF APPLIANCES—NEGLIGENCE—QUESTION FOR JURY.—Plaintiff, a locomotive fireman, was injured by the slipping of the apron, connecting the floor of the engine cab, with the floor of the tender. *Held*, it was a question for the jury whether the defendant railway company was guilty of negligence in using a cotter key to fasten the apron, instead of a bolt, and whether defendant was negligent in the manner in which the cotter key was used. *Held*, also, it was for the jury to determine whether the manner in which the cotter key was used, was an obvious defect, which the plaintiff was bound to observe.

3. MASTER AND SERVANT—INJURY TO LOCOMOTIVE FIREMAN—DEFECTIVE APPLIANCES—DUTY OF INSPECTION.—Plaintiff, a locomotive fireman, was injured by the slipping of an apron connecting the floors of the engine cab, with the floor of the tender. Under the rules of the defendant railway company, a locomotive had to be in good working order before leaving the engine house, *held*, it was the duty of the fireman to exercise ordinary care for his own safety, that he was not required to make an inspection of the engine to see if the same was in good repair, or in a safe condition; no affirmative duty rested on the plaintiff to discover defects and dangers, but if such defects and dangers did exist, that a man of ordinary prudence and care in the performance of his duties would have discovered, then these would be defects and dangers, plainly observable to plaintiff, and if he failed to observe them, he would be held to have assumed the risk.

4. MASTER AND SERVANT—KNOWLEDGE OF DEFECTS—PRESUMPTION.—Knowledge of defects will not be presumed, unless the defects are plainly observable.

5. MASTER AND SERVANT—INJURY TO SERVANT—CONDITION OF WORKING PLACE—LIGHTS.—Where a locomotive fireman was injured by the slipping of an apron connecting the floors of the engine cab and tender, evidence of the condition of the lights on the engine and tender, is admissible.

Appeal from Lonoke Circuit Court; *T. C. Trimble,* Judge; affirmed.

STATEMENT BY THE COURT.

In October, 1914, appellee was in the employ of the appellant as fireman on one of its engines. Appellee, while engaged in his work on one of the engines that had been sent to help clear the track of a derailed train, was sitting on his seatbox watching for signals that the engineer was unable to see on his side of the engine because of a curve at that point in the track. The engine had gotten behind the cars and was pushing them up in the yards. The fire was low and appellee stepped back toward the tank. As he went to lift his right foot it hung in something that threw him, and as he grabbed it turned his back out, injuring him. Appellee was discovered lying within a few inches of the track in an unconscious condition. He did not remember anything after he started to fall. When he raised his foot it hung and he fell forward. Appellee supposed that his foot went down between the tender and the engine. There was a sheet steel apron there covering the space between the tender and the engine. Some engines have a wider space than others. On some of the engines there was a space about twelve inches that the apron covered. Appellee had frequently to cross this apron in the discharge of his duties. He never went more than thirty minutes without crossing over the apron in putting in coal. On the night of the injury, not long before appellee was discovered in his unconscious condition, a witness had seen him at work on his engine. Shortly thereafter they examined his engine and found that one fastening of the apron on the left side had become loose and the apron had worked back, leaving an open space between the engine and the tender of about eight or ten inches.

The apron to this engine was fastened with a cotter key in the place in which a bolt was usually employed to make the connection. Fastening by a bolt was the safer method. The cotter key used to fasten the apron was out of the side next to the cab. When the cotter keys are used the ends are spread to keep them from coming out of the

hole through which they are placed to make the fastening. Witnesses demonstrated before the jury the way in which the apron was fastened by a model or small cut representing the manner in which the apron was fastened to the engine with the bolts and the cotter keys. One witness stated that the cotter key was just slipped in. "It was barely long enough to reach through." Another witness stated that he took the cotter key and without any effort inserted it in the place where it was before.

There was a rule of the company providing that the engine house foreman must be sure that each locomotive, before leaving the house for service on the road, is in good working order and is fully supplied with signals and all other requisites, including an ample supply of fuel and water.

The engines were supposed to have electric lights. On the night of the injury there was one light to the steam gauge and one for the water gauge. There were no back lights. Appellee was not able to see the condition of the cotter key with the lights he had. He stated that he did not think he could have seen it if he had taken special pains to look. The engine was supposed to be in first-class running order and safe condition when it was turned over to the enginemen. The company had an inspector to report anything that an engineer does not see. It was no part of the appellee's duty to look after the apron.

When the enginemen were switching the fireman was supposed to put in all of his time watching for signals and different things, and if the steam got low it was his duty to get down and put in a fire. When the train was running, the scoop was back in the tank and when he stepped down off of his seatbox he was facing the tank. The seatbox was some ten inches higher, and when he stepped off of that he stepped off to one side and the next step would land him on the open space or on the apron.

The appellee sued the appellant for damages resulting from his personal injuries, alleging that "instead of securely fastening the apron to the left side of the engine with a bolt and nut, or in some other way safely securing

and fastening the same," appellant "negligently and carelessly fastened the same by merely inserting a cotter key in such way as that the same worked or pulled out, thus leaving the left side of the apron unfastened and in such shape that it did not cover, but left wholly unprotected the open space of about eight or ten inches between the engine and tender;" that it was the duty of appellant "to have used a bolt and nut in fastening the apron, or at least, if it saw fit to use a cotter key, to have the same spread open after inserting the same in the space left from the bolt, so that it would not work or pull out by the jarring of the engine; that when said cotter key was put in place on this engine it was not spread open, nor was anything done to prevent its coming out; that on account of there being little or no light in the cab of the engine, appellee's injury having occurred in the night time, between 8:30 and 9 o'clock, when it was quite dark, he was unable to see that the apron had worked loose, and therefore had no knowledge thereof; that while engaged in his duty as fireman he undertook to step in the tender while the engine and train were in motion, and on account of the negligence and carelessness of the defendant as set forth he fell into the open space and was hurled with great force to the ground below, thereby receiving great and permanent injuries."

The appellant denied the material allegations of the complaint, and set up that appellee at the time of his injury was engaged in running a train which was pulling interstate commerce within the terms of the Federal Employer's Liability Act of 1908, under which appellee assumed the risk incident to the employment, and that the injury complained of was one of the ordinary and usual risks of the employment. The appellant also set up the defense of contributory negligence.

The court granted appellant's prayer for instruction No. 2, as follows:

"2. I charge you that before the plaintiff can recover at your hands that the burden is upon him to establish (a) that his fall from the engine was caused by rea-

son of the sheet or steel or apron being loose, and (b) that such condition was the result of actual carelessness or negligence upon the part of the defendant. And in determining these questions, the jury will not be permitted to guess, conjecture or surmise that his fall was caused by the loosened condition of the apron, or that such condition was the result of negligence or carelessness, but these facts must be established by competent testimony.''

In appellee's fourth prayer, after pointing out the distinction between contributory negligence and assumption of risk, the court told the jury that ''such dangers as are normally and necessarily incident to the occupation are assumed by the employee whether he is aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work, and safe and suitable appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are plainly observable and knowledge of the defect is not to be presumed.'' And also instructed the jury, in effect, that if they found that there was a defect which caused appellee's injury, and that such defect was not one of the risks ordinarily incident to the employment in which he was engaged, but resulted from the negligence of the appellant, its agents or employees, it would be the duty of the jury to find for the appellee, unless they found that the appellee was aware of the defect and the risk arising from it, or that the defect and risk were plainly observable to him.

Appellee's fifth prayer was as follows:

''5. You are instructed that the defendant is not a guarantor of the safety of the place in which the plaintiff was required to do his work, or of the appliances of the work, but it was its duty to see that ordinary care and prudence were exercised in this respect, to the end that the place in which the work was to be performed and the appliances of the work should be safe for the plaintiff,

while engaged in his work. And you are further instructed that the plaintiff had the right to assume that it had performed such duties, and no duty devolved on him to make search for such defects, if any there were.''

The appellant made a general objection to the rulings of the court in granting each of the above prayers.

The appellant requested the court, among others, to grant the following prayers for instructions:

''5.   The defendant is not an insurer of the safety of its employees, and is not liable for an accidental injury to one of them; so in this case, if the fall of the plaintiff was an accident, and not attributable to carelessness or negligence upon the part of the defendant, then plaintiff can not recover, and your verdict will be for the defendant.''

''6.   I charge you that the fact that plaintiff fell constitutes no evidence of negligence, and should not be considered by the jury as even a circumstance tending to show any carelessness or negligence.''

''7.   I charge you that the plaintiff in entering the employment of the defendant is held to have assumed the usual risks attending the performance of his duty in the customary way, and he also assumes the risks due to the negligence of the employer when aware of the defect and of the risk arising from it, or when such defects and risks are so open and obvious that an ordinarily prudent person would have observed and appreciated them.''

The court refused to give appellant's prayers 5 and 6, and modified prayer No. 7 by striking therefrom the last clause, *i. e.,* ''or when such defects and risks are so open and obvious that an ordinarily prudent person would have observed and appreciated them,'' and by adding in lieu thereof the words, ''or when the same is plainly observable to him,'' and giving the prayer as thus modified. To these rulings of the court the appellant duly excepted.

The jury returned a verdict in favor of the appellee in the sum of $7,500. Judgment was entered in appellee's favor for that sum, and this appeal was taken.

*Troy Pace,* for appellant.

1.   It was error to give plaintiff's second instruction. The master is not an insurer of safety.   The key was not structurally defective nor was it shown that it was negligence to use a cotter key, instead of a bolt and nut.

2.   The court erred in giving plaintiff's fourth and in refusing defendant's seventh instruction.   233 U. S. 492, 504.

3.   It was error to give plaintiff's fifth request; in refusing defendant's fifth and sixth.   There is no presumption of negligence on the master's part from the fact that an employee engaged in running a train is injured.   79 Ark. 76; 100 *Id.* 467; *Ib.* 422.   This case is governed by the Federal act, which has not changed the law.

4.   The court erred in permitting plaintiff to testify as to the character of lights on the engine.   46 Ark. 96.

5.   No causal connection between the alleged defect and the injury was shown.

*W. H. Pemberton,* for appellee.

1.   There is no error in the instructions.   An employee does not assume the risks caused by the negligence of the employer.   191 U. S. 68; 170 *Id.* 671, 674.   The employee has the right to rest on the assumption that the appliances furnished are free from defects discoverable by proper inspection, and there was no necessity for him to search for defects.   191 U. S. 68-9; 170 *Id.* 171. No contributory negligence was proven.   89 Ark. 424; 28 L. R. A. (N. S.) 250, 1255.

2.   No error is shown in other instructions given or refused, nor in the testimony admitted.   The judgment is not excessive.   There is nothing in this appeal.

WOOD, J., (after stating the facts).   (1) Appellant contends that appellee's fourth prayer for instruction made appellant an insurer of the safety of the appellee, but such was not the effect of the instruction.   In the first part of the instruction the court correctly defined the distinction between contributory negligence and the as-

sumption of risk, and correctly told the jury that such dangers as were normally and necessarily incident to the employment are assumed by the employee, but that such risks as arose out of the failure of the employer to exercise due care to provide a safe place of work and safe appliances for his employees was not a risk assumed by the employee unless he was aware of the defect and risk, or unless such defect and danger were plainly observable; that knowledge of such defect and danger were not to be presumed.

The court then submitted to the jury to determine from the evidence as to whether or not appellee's injury was caused by a defect in the appliances, the danger from the use of which was one ordinarily incident to the employment, or whether it was one that resulted from the negligence of the appellant, and also as to whether or not appellee was aware of the defects, and whether or not they were plainly observable to the appellee.

(2)   The evidence was amply sufficient to warrant the court in submitting to the jury the issue as to whether or not appellant was negligent under the circumstances in using the cotter key instead of a bolt to fasten the apron that covered the space between the engine and the tender, and whether or not the appellant was also negligent in the manner in which the cotter key was used. The jury had before them a representation of the manner in which the apron was fastened, and there was exhibited before them a cotter key which they had a right to find was the one used in making the fastening. It was also an issue for the jury as to whether the defect, if one existed, by the use of the cotter key instead of a bolt, and by the manner in which it was used, was an obvious defect, that is one that appellee, in the exercise of ordinary care for his own safety while performing his duties, was bound to observe.

As we view the instruction, it did not assume the existence of a defect that caused the injury, nor did it assume that appellant was negligent in causing the defect, if there was one, nor that the injury was the result of the

negligence of appellant in the manner of the use of the cotter key. It submitted to the jury to determine whether or not the defect, if it existed and caused the injury, was one of the ordinary risks incident to the employment, and plainly told them that if it was, then it was their duty to find in favor of the appellant. It also told them that it was their duty to find in favor of the appellant if the defect was plainly observable.

It must not be overlooked that in the first part of the instruction the court had told the jury that contributory negligence was a "failure to use such care for his safety as ordinarily prudent employees under similar circumstances would use." The instruction must be taken as a whole, and when the words "unless you should find that the plaintiff knew of such defect or the same was plainly observable to him" are construed in connection with the definition of contributory negligence in the first part of the instruction it is obvious that the court correctly instructed the jury on the issue of the assumption of risk. The instruction, as a whole, correctly declared the law in conformity with the decisions of this court and of the Supreme Court of the United States. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 503-504; *C., O. & G. Ry. Co.* v. *McDade*, 191 U. S. 68-69; *Tex. & Pac. Ry. Co.* v. *Archibald*, 170 U. S. 671, 672.

(3-4)  While it was the duty of the appellee to exercise ordinary care for his own safety in the use of the appliances furnished him, yet that did not require him to make an inspection of the engine to see whether or not the same was in good repair or in a safe condition. The undisputed evidence shows that under the rules of the company the locomotive, before leaving the engine house for service on the road, had to be in good working order. No affirmative duty therefore was imposed upon appellee to discover defects and dangers. However, if there were such defects and dangers that a man of ordinary prudence and care in the performance of his duties would have discovered, then these would be defects and dangers "plainly observable" to the appellee, and if he failed to observe

them he would be held to have assumed the risk. *St. Louis, I. M. & S. Ry. Co.* v. *Birch*, 89 Ark. 424, 28 L. R. A. (N. S.) 1250. In a note to the above case the editor says: "The doctrine as laid down by the United States Supreme Court is that the servant assumes the risk of those dangers due to the master's negligence which are known to him or which are plainly observable by him, but that he is not obliged to use even ordinary care in ascertaining or discovering the defects. In other words, knowledge of the defects will not be presumed unless the defects were plainly observable."

This is the doctrine enunciated in the instruction, in such way as to leave it to the jury to determine the issue of fact. There was testimony to warrant the court in submitting the issue to the jury as to whether or not the manner of making the fastening with the cotter key was an obvious defect and danger. What we have said in this connection makes it unnecessary to discuss the objections raised to the rulings of the court in refusing appellant's prayer No. 7, and also in giving appellee's prayer No. 5. It follows from what we have already said that there was no error in these rulings.

The court did not err in refusing appellant's prayers for instructions Nos. 5 and 6. The instructions were not correct declarations of law, applicable to the evidence adduced, and the idea intended to be conveyed by them was fully covered by correct instructions which the court gave at appellant's request. Prayer No. 6 was argumentative, and, under the evidence, clearly calculated to mislead the jury.

(5) The court did not err in permitting appellee to testify as to the character of the lights upon his engine. There were allegations in the complaint which justified the court in permitting this testimony. The evidence was amply sufficient to warrant the jury in finding that the proximate cause of appellee's injury was the negligence of appellant as alleged in the complaint; that the injury was the direct result of such negligence.

There are no reversible errors in the record, and the judgment is therefore affirmed.