BELLVILLE LAND & LUMBER COMPANY *v.* BRADSHAW.

## Opinion delivered April 23, 1917.

1. MASTER AND SERVANT—INJURY TO SERVANT—LATENT DEFECT.—
Where an employee was injured by a latent defect in a machine at
which he was set to work, and the defect was known to the em-
ployer but not to the employee, the question of negligence and assumed
risk are questions for the jury.

2. MASTER AND SERVANT—INJURY TO SERVANT—LINE OF DUTY.—De
ceased was employed by defendant saw mill company. Defendant
gave him no regular work, but being a "handy man" about the mill,
he was assigned to various sorts of work. Defendant's superintend-
ent directed him to a certain spot to "tail bolts"; deceased went
on the other side of the machine and "shoved bolts" instead, and
was fatally injured due to a defect in the machine at which he was work-
ing. *Held*, since his employment was general about the mill, de-
ceased, at the time of his injury was not disobeying any rule of the
company, or acting contrary to his employer's directions, and that a
verdict against the defendant would be sustained.

Appeal from White Circuit Court; *J. M. Jackson,*
Judge; affirmed.

*J. A. Watkins* and *S. M. Wassell,* for appellant.

1. The deceased assumed the risks that were inci-
dent to the operation of the machine. 95 Ark. 560; 122
Ark. 125; 77 Ark. 367; 53 *Id.* 117; 77 *Id.* 458; Labatt on
Master & S., § § 388, 404; 161 Mass. 153; 16 L. R. A. (N.
S.) 614. He was familiar with the machine.

2. The company used due care and provided a safe
place to work in. He left his usual place and went to an-
other. 104 Ark. 6; 90 *Id.* 149. He was working contrary
to instructions and assumed the risk. There was no
negligence on the part of appellant. Cases *supra.* 96
Ark. 461, 464; 84 *Id.* 377; 77 *Id.* 405; 115 *Id.* 350, 358; 12
L. R. A. (N. S.) 861; 123 Ark. 125.

*G. G. McKay* and *Brundidge & Neelly,* for appellee.

1. The machinery was defective and there was no
assumption of risk. 124 Ark. 596; 123 *Id.* 125. Plaintiff
did not know of the defects, nor were they observable
from inspection. Acts 1913, § 3, No. 175, p. 734; 53 Ark.
Law Rep. 223.

2.   He had no regular place of work—he worked anywhere he was directed.   84 Ark. 388.   The case was submitted upon proper instructions and the evidence sustains the verdict.

WOOD, J.   This suit was instituted by the appellee as administratrix of the estate of Joseph C. Bradshaw against the appellant to recover damages as administratrix and in her own right for the death of her son, alleged to have been caused through the negligence of appellant.

The complaint duly alleged that the appellant was a corporation, and that Joseph C. Bradshaw was, at the time of the alleged injury, in its employ as a feeder to a certain rip-saw connected with the machinery of the company; that the company was negligent in the following particulars:   That it had assigned Bradshaw to the duty of feeding the rip-saw, which required him to place timber and lumber in the rip-saw to be resawed; that the dial or mandrel that operated the said saw was entirely too short between the saw and the belt, which caused said saw to heat and kink; that this construction was negligent and the defect was known to the appellant; that the appellant failed to warn Bradshaw of the dangers incident to his employment; that the saw was entirely too small, being 15 inches in diameter when it should have been two feet or more; that sufficient boxing was not provided between the belt that operated the saw and the saw, which caused the saw to get hot and kink, and this caused the timber to fly back and inflict the injury upon Bradshaw; that the appellant failed to take the piece of timber which Bradshaw was running through the saw from the other side thereof, which contributed to cause his death; that there was no protection over the saw, and between the saw and where Bradshaw was required to stand; that the saws in use by the appellant were old, worn out and second-hand; that the boxing on the mandrel was old, second-hand and had been burned, which caused the saw to heat and kink; that the place in which Bradshaw was required to perform his duties was unsafe; that all the

above defects and the acts of negligence alleged on the part of the corporation were unknown to Bradshaw, but were known to the company, or by the exercise of ordinary care could have been discovered; that the negligent acts thus alleged caused the injury to Bradshaw, from which he suffered great mental and physical pain and anguish and from which injuries he died. The appellee asked for judgment in the sum of $1,000 for the pain and suffering, and in the sum of $20,000 for the benefit of the next of kin.

The answer denied specifically all the allegations of negligence and set up the defenses of assumed risk and contributory negligence.

The testimony showed that the machine at which Bradshaw was working consisted of a saw, extending through a table, and that the saw was driven by a belt attached to a pulley or mandrel. The boxings on the mandrel were too narrow, that is, too short, and the bolt on the pulley was too tight, which caused a friction, and that caused the mandrel to get hot, and the heating of the mandrel would heat the saw. When the saw got hot, it would not run straight and would throw the timber out, that is, it would have the effect to kick back the timber. The superintendent of the mill had knowledge of this defective condition.

Several witnesses testified that the saw did not run properly; that when it got hot it would turn first one way and then the other; that when it got hot, it would kink and would not run through the timber right. One witness testified "that he worked at this saw for two or three months. His idea was that the boxing on the shaft was not big enough for the mandrel. It was a three-inch boxing and it ought to have been six inches. The saw would run hot and kink and would not go through the timber right. It would wabble and not cut through. Witness got kicked back as a result of this several times. It knocked witness down twice. This witness saw the piece of timber that hit Bradshaw and the marks on it where the saw had

kicked it back.   It was splintered there where the top of the teeth caught it.''

There was testimony on behalf of the appellant tending to show that the rigging of the saw was patterned after approved construction in other mills, and that it was properly constructed, and that there was no defect about the mandrel or the saw.

There was a decided conflict in the testimony as to the condition of the machinery, and this conflict in the evidence was sufficient to warrant the court in submitting to the jury the issue as to whether or not appellant was negligent in failing to exercise ordinary care to provide reasonably safe appliances to its employee with which to do his work.   This issue was submitted on instructions of which appellant does not here complain, and there was testimony to support the verdict of the jury on the issue of negligence.

The appellant contends that under the undisputed testimony Bradshaw assumed the risk of the danger to which he was exposed and therefore can not recover.

It was shown that Bradshaw was about 19 years old. His mother, the appellee, testified that he had been working about sawmills ever since he was a little tot—commenced when he was about 11 or 12 years old; that he was a bright boy, and was thoroughly familiar with sawmill work; could do most any kind of work around sawmills, and was considered a handy man at such work.

The superintendent of the mill plant testified that Bradshaw ''was a handy man in every place you would put him in a sawmill;'' that he had operated this saw frequently before that day; that he was a bright boy and familiar with every part of the sawmill business.

One witness testified that some days the saw would get hot and some days it would not; sometimes it would run good and sometimes not.   It had been running bad off and on ever since he had been working there, some two or three months.   Bradshaw had been working at the mill about a year or over.   Part of the time he trucked

timber, and part of the time pulled up logs; then he went to work on the carrier, and set blocks, and did most everything around the mill. Witness was asked if he or any one else told young Bradshaw that the saw was not running well or was out of fix, and witness answered, "No, sir."

While this testimony shows that Bradshaw was a bright young man and familiar generally with the work about sawmills and had worked frequently at this saw before, it does not show, and there is no testimony in the record to show, that he had any knowledge at the time of his injury of the defective construction of the mandrel, or that he had knowledge that the saw was in a defective condition, or that it was not running properly. The work of feeding the saw was not his regular job, and for aught that appears to the contrary, during the days before when he was frequently working about the saw the same way, the saw, as one of the witnesses expressed it, may have been "running good." At any rate there is nothing in the record to show that anything occurred previous to the injury to Bradshaw that should have caused him to make any investigation as to any structural defects about the rigging of the saw or the saw itself. It can not be said that the defect of the mandrel as disclosed by the testimony of witnesses on behalf of the appellee was an obvious one. On the contrary, the defect was structural and of a latent character, rather than patent. It was such a defect that, when the attention of the superintendent of appellant was directed to it, it became appellant's duty to correct the same, and since there was evidence that the attention of the superintendent was called to the defective condition, the jury were warranted in finding that the appellant was negligent in not exercising ordinary care to remedy the defect. But it was not one of those obvious defects that an employee would be bound to take notice of in doing the work required about the saw; nor was it a danger ordinarily incident to the employment. But, on the contrary, it was a danger brought about by the negli-

gence of the employer, and, since the same was not an obvious danger, the employee did not assume it. At any rate, under the testimony it was at least a question of fact for the jury to determine from the evidence as to whether or not Bradshaw assumed the risk, and this issue the court submitted to the jury under instructions given at the instance of the appellant, and which declared the law in conformity with well established principles governing the doctrine of assumed risk that have been time and time again declared by this court.

(1) In one of our late cases we announced the familiar doctrine that "such dangers as are normally and necessarily incident to the employment are assumed by the employee, but that such risks as arise out of the failure of the employer to exercise due care to provide a safe place of work and safe appliances for his employees are not risks assumed by the employee, unless he is aware of the defect and risk, and unless such defect and danger are plainly observable, and knowledge of such defect and danger is not to be presumed." *St. Louis, I. M. & S. Ry. Co.* v. *Howard*, 124 Ark. 588, 595.

The rule above announced is applicable to the facts of this record.

(2) Appellant further contends that Bradshaw assumed the risk because he had been directed by the superintendent to take timbers from this saw, and instead, at the request of a co-worker who was employed as feeder for the saw, he had taken the latter's position, and thus at the time of the injury was working at a place not assigned him by his employer, and therefore was a volunteer in this service and assumed the risk of the danger connected therewith.

The testimony tended to prove that Bradshaw had no regular or set job about the mill, but that, to use the language of the superintendent "he was a handy man in any place you put him in a sawmill." On the day the accident occurred Bradshaw was setting blocks in the carriage that carried the logs to the main saw. The su-

perintendent was asked how he happened to change his work that afternoon, and answered, ''We were loading cars. Mr. Bradshaw was familiar with any part of the sawmill business, and I sent him over to tail the bolts for Bill Hurley and put part of the crew to loading cars.'' Witness ''sent him there to tail, and did not know why he took the other side of the table and shoved the bolts in instead of tailing them.'' Witness did not request him to do that work, and Hurley, who was feeding the saw, had no authority over him. The testimony shows that he had frequently operated the saw before and was a competent man to do so.

Hurley testified that he (Bradshaw) came back there and ''I asked him if he did not want to push awhile, and he said he did, or would. I then asked him to push awhile, and he commenced pushing blocks through the saw, and I went around behind there to take the pieces off, and I don't suppose he had been there over a half an hour when the injury occurred.''

Learned counsel for appellant, to sustain their contention, rely upon the doctrine of our court and the authorities generally, and quote from case note to *Pioneer Mining & Mfg. Co.* v. *Melvin M. Tally,* 12 L. R. A. (N. S.) 861, as follows: ''The cases very generally hold that where a servant leaves his working place, and goes to another portion of the plant for his own purposes, and is injured while so away from his proper place, the master is not liable for such injuries.'' And they cite also several of our own cases, among them the case of *St. Louis, I. M. & S. Ry. Co.* v. *Schultz,* 115 Ark. 350, where we said: ''But where the servant adopts methods for his own convenience, contrary to the methods expressly prescribed by his employer, and where the servant occupies places about the premises in the performance of his duties that the master could not reasonably anticipate that the servant would occupy, then the master owes the servant no duty to make those places or methods safe, and his failure to do so is not actionable negligence.'' We have examined

all the cases cited, and they are clearly differentiated from the instant case on the facts. In the cases cited from our own court, where the doctrine above relied upon is announced, there was evidence tending to prove that the servant was injured while violating the rules and doing something contrary to the directions of the master, and was not engaged in the duty which the master had assigned to him. But that doctrine has no application to the facts of this record for the reason that here the testimony tended to show that Bradshaw's employment did not contemplate that he should work in any particular place or at any special job. The testimony tends to prove, and the jury were warranted in finding, that he was in the line of his employment when he was working at any place that the appellant saw fit to assign him about the mill. He was a "handy man" in any place where appellant might put him. Bradshaw, knowing that such was the character of his employment, could not be said to be a volunteer, even though, after he had been directed to tail the bolts, he exchanged places at the request of a co-worker at the saw.

Since the nature of his employment was general for any job about the mill, Bradshaw, at the time of his injury, was not disobeying any rule of the company, or acting contrary to any method prescribed by his employer for the performance of his duties.

The lumber company, on the contrary, under the proof, must be held to have contemplated that Bradshaw might occupy any place incident to the mill work in which appellant was engaged. The testimony tends to prove that Bradshaw lost his life while in the line of the duty for which he was employed, and as a result of his employer's negligence.

The verdict and judgment in favor of the appellee were therefore correct. Let the judgment be affirmed.